

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-2008

# M.S. v. Mullica Twp Bd Ed

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2466

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"M.S. v. Mullica Twp Bd Ed" (2008). *2008 Decisions*. Paper 1631.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1631

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2466
_____

M.S; D.S., individually and on behalf of M.S., Jr.,
                                                          Appellants

v.

MULLICA TOWNSHIP BOARD OF EDUCATION
_____

Appeal from the United States District Court
for the District of New Jersey
(D. N.J. Civil No. 06-cv-00533)
District Judge:  Honorable Joseph E. Irenas
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 1, 2008

Before: RENDELL, JORDAN and GARTH, Circuit Judges

(Filed: February 7, 2008)
_____

OPINION OF THE COURT
_____

PER CURIAM

     M.S. and D.S., individually and on behalf of their son M.S., Jr., appeal an order of

the United States District Court for the District of New Jersey granting judgment for

Mullica Township Board of Education on the administrative agency record in their action

under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1491 ("IDEA"). We will affirm.

M.S. Jr. was born prematurely and suffered serious health problems that resulted in developmental delays in his gross and fine motor skills, speech-language development, and sensory integration. When he was about three years old, a Mullica Township Board of Education Child Study Team determined that M.S. Jr. was preschool disabled. M.S. Jr. enrolled in the Township's preschool. An Individualized Education Program ("IEP") was created, and early intervention services were provided. M.S. Jr.'s IEP was reviewed one year later, and the Child Study Team recommended that early intervention services continue.

D.S. agreed with the recommended services, but she also sought an independent evaluation of M.S. Jr. by an occupational therapist. The therapist recommended 60 minutes of occupational therapy per week instead of the 30 minutes provided for in M.S. Jr.'s IEP. D.S. wrote the Child Study Team and asked whether it would cover the cost of additional therapy. In response, the Child Study Team held a Program Review to discuss D.S.'s concerns and determine whether M.S. Jr.'s current program was appropriate. Because M.S. Jr. was not exhibiting the problems identified in the private therapist's report, the Child Study Team suggested a re-evaluation of M.S. Jr..

D.S. did not consent to a re-evaluation, and wrote a letter to the Child Study Team stating that she did not request a Program Review, and that she only wanted to extend the

current services to an outside provider. D.S. stated that M.S. Jr.'s developmental issues were too complicated for the school to handle, that the Child Study Team did not recognize these issues, and that M.S. Jr.'s motor skills began to improve with private therapy. M.S. Jr. had already begun private therapy at the time of the Program Review.

D.S. then wrote to the school district Superintendent and stated that M.S. Jr. required occupational therapy twice a week with equipment not available at school or at home. D.S. asked that the school discontinue occupational therapy because the therapy there was ineffective and harmful. M.S. Jr.'s school principal replied that the Child Study Team had created a re-evaluation plan to determine whether M.S. Jr. required different services, and that the school would honor her request to discontinue therapy. M.S. Jr. began private occupational therapy twice a week.

The Child Study Team later held a re-evaluation meeting to determine M.S. Jr.'s therapy needs. A new IEP was created, which included a recommendation that occupational therapy be provided once a week for thirty minutes. D.S. then wrote to the Child Study Team and stated her belief that the school was unable to provide M.S. Jr. a free and appropriate public education, and that he must be placed in an out-of-district school. D.S. enclosed information about the Orchard Friends School, which offered occupational therapy five times a week along with other programs. In a separate letter, D.S. informed the Child Study Team that she expected to arrange for M.S. Jr.'s placement at Orchard Friends the next week.

The Child Study Team met to discuss a re-evaluation of M.S. Jr. for kindergarten. D.S. initially withheld her consent, but later agreed to the re-evaluation. The parties' lawyers appear to have discussed placing M.S. Jr. at Orchard Friends, but they did not reach an agreement. D.S. then informed the Superintendent that she intended to request a due process hearing and seek reimbursement for tuition, evaluations, and legal fees. M.S. Jr. enrolled in Orchard Friends kindergarten, but stopped attending towards the end of the school year due to non-payment of tuition.

The Child Study Team met to re-evaluate M.S. Jr.'s classification and create an IEP for first grade. D.S. sent the Child Study Team private evaluations of M.S. Jr. and requested that the school district pay for programs recommended in the evaluations. That same day, D.S. filed a due process petition with the Office of Special Education Programs of the New Jersey Department of Education. D.S. sought an order directing the Board of Education to provide M.S. Jr. with a free and appropriate public education, and to reimburse D.S. for tuition paid to Orchard Friends, the cost of private therapy, and various private evaluations.

The Administrative Law Judge conducted nine days of hearings. In a lengthy decision, the ALJ found that M.S. Jr. is handicapped and eligible for a free and appropriate public education, including services under the IDEA. The ALJ further found that the Board made every effort to provide M.S. Jr. with such an education, but that D.S. had obstructed the Child Study Team at every turn. Because D.S. did not give the school

4

district the opportunity to provide M.S. Jr. a meaningful free and appropriate public education, the ALJ stated there was no way of determining whether his IEP met the requirements of the IDEA. Noting that D.S. had unilaterally removed M.S. Jr. from the public school and enrolled him in private school, the ALJ held that D.S. was not entitled to tuition reimbursement. The ALJ also ruled that the Board must pay for costs related to M.S. Jr.'s evaluations to the extent that the Child Study Team had incorporated them into M.S.'s first-grade IEP.[1]

M.S. Jr.'s parents[2] filed a complaint in District Court against the Board under the IDEA, alleging that the Board failed to provide M.S., Jr. with a free and appropriate public education, and seeking reimbursement for the cost of tuition at Orchard Friends and occupational therapy, and enforcement of the ALJ's decision that the Board pay for M.S. Jr.'s evaluations. The Board brought a counterclaim and appealed the ALJ's decision that M.S. Jr.'s parents were entitled to reimbursement of costs related to evaluations incorporated in M.S. Jr.'s first grade IEP. The parties moved for judgment on the administrative record.

The District Court found that a preponderance of the evidence supported the ALJ's finding that D.S. refused to cooperate with the Child Study Team to such an extent that it

[1]The ALJ initially ordered the Child Study Team to meet and revise this IEP based on information in recent private evaluations.

[2]Our references to M.S. Jr.'s parents are to them as individuals and in their role as representatives of M.S. Jr.

5

was unreasonably prevented from creating an IEP for the school year that D.S. enrolled M.S. Jr. at Orchard Friends. Because of D.S.'s unreasonableness, the District Court held that M.S. Jr.'s parents should not be reimbursed for private tuition and related services. See 20 U.S.C. § 1412(a)(10)(C). The District Court further held that, even absent D.S.'s unreasonableness, the preponderance of the evidence did not support M.S. Jr.'s parents' argument that the IEP in place when D.S. decided to enroll M.S. Jr. at Orchard Friends failed to provide M.S. Jr. a free and appropriate public education.

The District Court also concluded that M.S. Jr.'s parents were not entitled to reimbursement for the evaluations performed after D.S. removed M.S. Jr. from the school district and while he was attending Orchard Friends. The District Court noted that these evaluations were sought to establish that the Board's services were inadequate, and not with the intention that M.S. Jr. would return to the district. Finally, the District Court denied M.S. Jr.'s parents' request for legal fees. This appeal followed.[3]

M.S. Jr.'s parents' appellate brief consists of medical records and other documents along with summaries of, and comments about, these documents. We will address the few issues raised for our review. First, M.S. Jr.'s parents make the baseless allegation that the ALJ instructed the school district to falsify documents. They also contend that

---

[3]We exercise plenary review of whether the District Court applied the correct legal standards under the IDEA, and we review the District Court's factual findings for clear error. L.E. v. Ramsey Board of Educ., 435 F.3d 384, 389 (3d Cir. 2006). The District Court applied a modified de novo review and was required to give due weight to the ALJ's factual findings. Id.

the ALJ should have recused himself because he was a former public school administrator. M.S. Jr.'s parents did not raise these issues in District Court. In any event, the ALJ's former position in and of itself is insufficient to establish bias requiring recusal.

M.S. Jr.'s parents also argue that the District Court ignored the fact that M.S. Jr. has a brain injury, and failed to review M.S. Jr.'s private evaluations. The District Court, however, recognized M.S. Jr.'s brain injury in its opinion and discussed the content of his private evaluations in determining that the evidence failed to establish that M.S., Jr. received inadequate services from the school district. Finally, M.S. Jr.'s parents contend that the District Court either failed to consider or misapplied sections of the New Jersey Administrative Code. They have not explained, however, how these alleged errors have any bearing on the District Court's conclusion that they are not entitled to reimbursement of tuition and their other costs due to their unreasonableness, or alternatively, because they did not show that the Township did not provide M.S. Jr. a free and appropriate education.

Accordingly, we shall affirm the judgment of the District Court for the reasons set forth *in that Court's comprehensive and excellent opinion.* See 485 F. Supp. 2d 555 (D.N.J. 2007).[4]

---

[4]Appellants' Motion for Protective Order and Sealing of Records is granted to the extent that they request that all administrative exhibits, transcripts, educational, and other documents regarding M.S. Jr. be sealed.